UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

KARL V. FARMER, Plaintiff,

v.

NEAL D. GOLDMAN Defendant.

CIVIL ACTION NO. ~~1:04-cv-00441-SM~~ 05cv10117RGS

**RE-NUMBERED AMENDED COMPLAINT**

**STATEMENT OF JURISDICTION**

1 Neal D. Goldman was the executive vise president, general counsel, chief administrative officer and corporate head of the Human Resources at Polaroid Corporation during the time of this issue. Neal was the plan administrator or committee chairman in the event of plan administration by committee for health, welfare, severance benefit and retiree benefit plans for Polaroid Corporation. As such Neal had a fiduciary responsibility to notify/alert potential beneficiaries that a benefit that the beneficiary had been promised would not be available.

**BACKGROUND**

2 In July of 2001 Karl V. Farmer (Karl), Polaroid ID# 11642C, was notified by his manager, Craig Gustafson, that his position of manager in the Customer Services organization was to be eliminated as of the end of September, 2001. He was also notified

that because of his age (54.7 years) and years of service (30.27 years) the severance program that was available would consider Karl a "cross-over" retiree and Polaroid would consider him a bone a fide retiree.

3 Karl was informed of his options:

4 Leave Polaroid under the severance program with the benefits (see Exhibit A – letter of severance) plus 6 months medical and dental coverage at Polaroid employee rates, then medical coverage at retiree rates thereafter.

or

5 Find other employment within Polaroid in another division or department.

6 Karl was also informed of an available comparable level engineering position in Polaroid's Wayland building. The job had been vacated voluntarily and needed to be filled. On September 11, 2001, Karl interviewed with Diego Betancourt and was told if he decided to remain in Polaroid he could have the job.

7 Needing more input Karl had discussions with his managers and the human resource representative but they had no new information.

8 During the summer there had been a number of rumors that Polaroid was going into bankruptcy and/or was going to be purchased and merge with Gillette, Fuji or some other company. In mid-August Polaroid senior management conducted a series of meetings across the company to clarify the corporation's position.

9 At the meeting Karl attended in 201 Burlington Rd., Bedford, MA on or about August 15, 2001, Neal Goldman, vice president and head of corporate Human Resources organization was the officer who gave the presentation.

10 The main inputs given at the meeting via presentation or answers to questions were:

11 Statement from presenter: Polaroid had no intentions at that time to file for bankruptcy. Although because of Polaroid's adverse financial position bankruptcy protection may be a viable option at some time. (no time frame or deadline given)

12 Statement from presenter: As far as our financial position regarding our debtors, we have them where we want them. They have to come to us.

13 Question from the floor: If I accept a severance package and Polaroid files chapter 11 do I still get my severance money?

14 Answer: As far as he (Neal D. Goldman) knew, if Polaroid did file for bankruptcy the court would allow the payment of severances. (Polaroid's choice would be to pay benefits even if Polaroid did file for bankruptcy protection)

15 Other issues effecting Karl's decision:

16 Polaroid's severance programs had been significantly reduced over the last 4 – 5 years. Previous programs would have yielded as much as 2.5 years pay with Karl's seniority. The most recent program, less than a year previous, was 25% more pay for the same seniority.

17 Karl had thought of teaching school. With the severance money he could avail himself of the necessary training or certificates needed to do so.

18 All options considered Karl made the decision to accept the severance program and leave Polaroid. The severance termination of employment date was September 28, 2001. The sign-out date was two (2) weeks prior to termination date.

**TERMINATION OF SEVERANCE PLAN**

19 On October 11, 2001 Karl was to receive his first payment. Karl called Polaroid to inquire whether the payment would be by check or automatic deposit into his checking

account. He was told at that time it would be deposited if he had his regular paycheck deposited. However, people had been calling in complaining that they had not received their checks. The following day, October 12, 2001 Polaroid announced they had filed for chapter 11 bankruptcy protection. They also announced they were terminating all retiree health and welfare benefits, effective immediately.

20 Recalling the August meeting in which Neal Goldman said to his knowledge severances where paid during bankruptcy, Karl called to inquire what that meant for his severance plan agreement. Karl was told the agreement was null and void and not going to be upheld by Polaroid. After leaving Polaroid under a severance agreement in September, Karl ended up getting no salary, no severance, no health insurance and neither interim life nor dental insurance as promised.

**ARGUMENT**

21 This was a breech of fiduciary responsibility of the plan administrator, Neal Goldman. Had Polaroid's plan administrator executed his fiduciary responsibility and notified Karl that they had intended to file for bankruptcy protection and/or that Polaroid was not going to honor the severance agreement, Karl would have accepted the position in Wayland.

22 Because the position that was offered to Karl is still an active position in the "new" Polaroid, Karl would have maintained his salary and benefits and would still be an active Polaroid employee. Also for that consideration is the likelihood Karl would have received performance bonuses given to "the new" Polaroid's employees in the last two years.

**EVIDENCE**

23 Karl served as Chair of Official Committee of Retirees of Polaroid as recognized by the federal bankruptcy court processing Polaroid's bankruptcy protection case and as the chair Trustee of the Polaroid Retirees Trust. In this capacity and independently learned that:

24 Polaroid was in fact discussing bankruptcy at least as far back as June 2001

25 The law firm that performed the legal counsel for Polaroid during the chapter 11 bankruptcy protection proceedings was hired in July of 2001.

26 In August 2001 Polaroid offered past Polaroid Corporate officers a % on the dollar buy-out for their interest in the company.

27 On or about October 7, 2001 Polaroid met with the Polaroid Retirees Association (PRA) board of directors to notify them that Polaroid was terminating all retirees' health and welfare benefits as of October 31, 2001. (This apparent gesture of good faith turned out to be another misrepresentation by Polaroid. They terminated the benefits as part of their chapter 11 bankruptcy filling on October 12, 2001, retroactive to October 1, 2001, without further notice to the PRA.)

28 During the committee's investigation of Polaroid's process of declaring chapter 11, with Greenberg Traurig, Karl learned that the breech of fiduciary responsibility actually had in fact occurred.

29 From the deposition of Neal Goldman Tuesday, April 2, 2002, by Greenberg Traurig, LLP at One International Place, Boston, Massachusetts.

30 On pages 54 and 55 Neal Goldman admits that Skadden Arps Slate Meagher & Flom LLP was hired in July/August of 2001 to assist Polaroid through restructuring, i.e. chapter 11 bankruptcy protection.

31 On pages 99 – 101 Neal Goldman discusses the details of the involuntary severance plan and the employees' options. Also discussed were the erosion of benefits from past to present severance plans.

32 On page 102 – 104 Neal Goldman admits that he did not execute his fiduciary responsibility to notify employees or retirees that there benefits were to be severed.

33 On pages 107 and 108 Neal admits to being a fiduciary.

**SETTLEMENT REQUEST**

34 Karl had this salaried position offer and was misled by the information given by Neal Goldman Polaroid's presenter at the August meeting. Karl should be entitled to receive all wages and performance bonuses that would have been paid and the medial payments made by Karl for the last 3 years.

35 Karl V Farmer is moving for a settlement against Neal D. Goldman for the breech of fiduciary responsibility of $750,000.00 or whatever relief this court deems appropriate.

KARL V. FARMER

30 Sawyer Rd.

Hampstead, NH 03841

(603) 329-1165

Dated: March 21, 2005

Cc: to Neal D. Goldman

By his attorney,

Michael R. Pontrelli

Foley & Lardner, LLP

111 Huntington Avenue

Boston, Massachusetts 02131

(617) 342-4000